# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-01123-SCT

*JESSIE J. FLEMING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/1997 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHNNIE E. WALLS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DOUG DOUGLAS EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 1/28/99 |
| MOTION FOR REHEARING: | |
| MANDATE ISSUED: | 4/12/99 |

### BEFORE PRATHER, C.J., McRAE AND WALLER, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. Jessie J. Fleming appeals a conviction for fraud by a public officer. Fleming argues that the trial court erred in denying his ***Batson*** objections to the State's use of peremptory challenges, that the trial court erred for refusing Fleming's causal challenge to venirewoman Kathy England, and that the jury verdict is against the overwhelming weight of the evidence. As explained below, we find no reversible error as to any of the issues. Hence, the judgment of the trial court is affirmed.

### STATEMENT OF THE CASE

¶2. On September 6, 1991, Fleming was indicted for the offense of fraud by a public officer pursuant to Miss. Code Ann. § 97-11-31 (Rev. 1994). Fleming allegedly feloniously defrauded Attala County of $156.93 by causing his personal 24-volt John Deere starter repaired with county funds. Fleming pled not guilty at his September 10 arraignment. On March 25, 1992, the jury returned a verdict of guilty. On March 26, 1992, Fleming was sentenced to 5 years4 years of which were suspendedin the custody of the Mississippi Department of Corrections (MDOC). Fleming filed a Motion for Judgment Notwithstanding the Verdict or for a New Trial, which the court denied. Subsequently, Fleming filed a Notice of Appeal.

¶3. On October 5, 1992, Fleming filed a Motion to Stay Appeal and Allow Defendant to Proceed in Trial Court. Fleming argued that after filing his Notice of Appeal he learned that Clarence T. Foster, one of the jurors in his case, was a convicted felon whom, when asked during voir dire if he had ever been charged with or convicted of a crime, did not reveal his conviction. On March 11, 1993, Justice Roberts of the

Mississippi Supreme Court stayed Fleming's appeal for a period of 45 days. On April 12, 1993, Fleming filed a Motion for New Trial. On June 29, 1993, the Attala County Circuit Court issued an Order Denying Defendant's Motion for a New Trial. Final judgment was entered July 6, 1993, followed by a timely appeal on August 4, 1993. On September 8, 1993, the Supreme Court dissolved its stay.

¶4. On January 9, 1997, the Supreme Court reversed and remanded the case. *Fleming v. State*, 687 So. 2d 146 (Miss. 1997). On September 17, 1997, the jury rendered a verdict of guilty. Pursuant to such verdict, the trial court held a sentencing hearing on September 19, at which time the court sentenced Fleming to serve 5 years with MDOC, 4 of which were suspended. Final judgment was entered. Then, Fleming filed a Motion for Judgment Not Withstanding the Verdict or for a New Trial, which was denied. Fleming subsequently filed a Notice of Appeal both from the final judgment and from the denial of the Motion for Judgment Notwithstanding the Verdict or for a New Trial. Fleming argues on appeal:

**I. THE TRIAL COURT ERRED BY DENYING DEFENDANT'S BATSON OBJECTIONS TO THE PROSECUTOR'S PEREMPTORY CHALLENGE OF BLACK VENIREMEN.**

**II. THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S CAUSAL CHALLENGE TO VENIREWOMAN, ENGLAND, BECAUSE OF HER FAMILY RELATIONS TO ONE OF THE STATE'S MAIN WITNESSES, MR. CHARLES ENGLAND.**

**III. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT, FOR A PEREMPTORY INSTRUCTION OF NOT GUILTY, AND THE DEFENDANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE JURY VERDICT OR IN ALTERNATIVE A NEW TRIAL BECAUSE THE VERDICT OF THE JURY WAS CONTRARY TO OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.**

### STATEMENT OF THE FACTS

¶5. Jessie J. Fleming was elected supervisor of District (Beat) 4 in Attala County in 1984. Fleming served 8 years and was elected to a third term. Upon entering office, Fleming was presented an inventory by the chancery clerk, Charles England. Fleming proceeded to take inventory of the District's property. Fleming was to confirm that all of the equipment on the inventory was present. Fleming testified that some items could not be found. When Fleming returned the inventory sheet, he informed the chancery clerk that he could not find all the equipment, including a 4020 John Deere tractor, so Fleming refused to sign the inventory sheet that listed the tractor. The situation was resolved by the chancery clerk giving Fleming another inventory sheet, but with the tractor deleted. Of note is the fact that both Marshall Fleming and Jerry Jones testified that while they were employed with the county, but before Fleming's administration, Beat 4 kept a 4020 John Deere tractor at the barn. Marshall further testified that he saw an old, rusty starter on the tool table.

¶6. Fleming testified that in May 1991, Sammie Ball, the maintenance man, suggested that Fleming order repair of a John Deere starter, which was found in the Beat 4 Barn. Fleming testified that the starter had been in the barn several years because in May of 1991 no equipment was being operated that would have possessed such a starter. Indeed, Fleming testified that the starter at issue was neither on the inventory list nor his. Fleming testified that he was having problems getting equipment repaired through the central shop, so, at the suggestion of Ball, he had the starter repaired in case there were problems with some of the equipment. At the time of the repair, no machinery needed a starter.

¶7. Sammie Ball testified he told Fleming that Fleming could take the starter, get it rebuilt, and save the county some money. Ball further stated that the county did not always wait for a starter to quit working before the county would purchase starter parts because the county wished to keep parts in stock so machines are available for use even if a part breaks down. Indeed, Ball testified he told Fleming the starter at issue could be rebuilt so "[w]e will have it when we get ready for it."

¶8. Fleming took the starter to Delmer Larson of D & C Auto Electric for repairs. Fleming told Larson he would pick up the starter when Larson completed repairing it. Fleming testified that after the starter was repaired, Fleming took the part back to the county barn where it stayed for several days.

¶9. Delmer Larson testified that he became suspicious of Fleming when Fleming told him not to follow Larson's typical procedure of taking such a part to the county barn; rather, Fleming wanted to pick up the starter. Larson further testified that Fleming did not ask for the starter to be modified despite the fact that the starter would not fit anything other than a 4020 John Deere tractor without modification.

¶10. According to Fleming's testimony, upon having the starter repaired and placed in the barn, he expressed concern to his employees as to whether the starter actually worked. So, Fleming told his employees that he would take the starter to see if it worked, then return it to the county barn. Fleming testified he took the starter to his home and partially installed it on his own John Deere tractor. Fleming's tractor contained Fleming's personal starter, which was working version of the same type of starter he was testing. Fleming's tractor had not been used in several months.

¶11. According to Fleming, there were problems installing the county's starter, so the person helping him went to check exactly how the starter should be installed, but, before Fleming's helper returned, Investigator Drane told the chancery clerk that he [Drane] wanted to talk with Fleming. Fleming testified that it was neither his intention to keep nor use the starter, just to test it. Fleming further testified that the starter at issue was neither fully installed nor actually used on his personal tractor.

¶12. Fleming told Drane the starter came from Beat 4 barn, then Drane asked to see the starter. Fleming testified he told Drane he would show Drane the starter. Further, Fleming admitted he first lied to Drane that the starter was in the county barn when it was actually at Fleming's home on his personal tractor, but Fleming also accused Drane of lying. Fleming testified that he never told Drane the starter was Fleming's personal property; rather, he testified he told Drane the starter was owned by the county. Further, Fleming testified that:

> He [Drane] said if you take care of this matter, if you make it go away, then it probably won't interfere, have any bearing on the election. So at that time that is when I offered to pay for the starter.

Fleming testified that he did not pay for the starter due to a personal feeling that he had done something wrong. Instead, he paid for it because Drane told him paying would make the problem go away.

¶13. Waltine Drane testified that he is an investigator with the Mississippi State Department of Audit. He testified that a complaint had been filed against Jessie Fleming alleging that Fleming had caused a personal starter to be repaired with Attala County funds. Pursuant to the complaint, Drane met with England and obtained copies of the requisition, the purchase order, and the invoice before he met with Fleming. During the conversation with Fleming, Drane testified to the following:

I wanted to know why he [Fleming] was repairing a starter for a piece of equipment that the county did not own. And he said well, I think it was just one that we had laying around in the shop. And at that point in time he said well, if you will give me about 30 minutes I will have it at the barn.

Drane testified that he then wanted to know why Fleming needed time if the part was at the barn. Drane testified that he said let's go look at it. Then, Drane asked Fleming if he needed time because the starter was on Fleming's personal tractor. Fleming replied with a yes, but gave no reason as to why it was on such tractor. Drane then said he was required to seek a civil recovery because taxpayer dollars had been used to repair the part. Drane and Fleming went to Fleming's home, and Fleming removed the starter and gave it to Drane. Drane testified that Fleming admitted his actions were stupid, an admission which Fleming denied in his testimony. Fleming paid the both the amount of the starter$156.93and the amount charged for investigation time$76.56for a total of $233.49.

¶14. At trial, Drane read from his August 15, 1991, report regarding the case. Drane testified page 1 of the report stated "Supervisor Fleming admitted taking his personal starter to D & C Auto Electric to have it rebuilt and authorizing them to bill all repair work to Attala County, . . ." Drane then testified that on page 2 of the same report he recommended the case be closed. Drane testified that he did not have criminal jurisdiction at the time, so the case was only closed as to the civil issues.

## ARGUMENTS AND DISCUSSION OF THE LAW

## I. THE TRIAL COURT ERRED BY DENYING DEFENDANT'S BATSON OBJECTIONS TO THE PROSECUTOR'S PEREMPTORY CHALLENGE OF BLACK VENIREMEN.

¶15. While the availability of peremptory challenges is not a matter of constitutional right, the use of such challenges, when available, must be constitutional. *Sewell v. State*, 721 So. 2d 129, 135 (Miss. 1998). Key to our current peremptory challenge jurisprudence is *Batson v. Kentucky*, 476 U.S. 79 (1986), which applies solely to peremptory challenges and not to excuses for cause. *Brown v. Blackwood*, 697 So. 2d 763, 772 (Miss. 1997). In *Batson*, the United States Supreme Court held that the prosecution may not strike a member of the venire simply because that juror is black. *Batson*, 476 U.S. at 79-100. A jury's status as all white or all black is not what violates *Batson*; rather, *Batson* is violated by the racially discriminatory use of peremptory challenges to strike jurors. *Govan v. State*, 591 So. 2d 428, 430 (Miss. 1991).

¶16. In *Britt v. State*, 520 So. 2d 1377 (Miss. 1988), this Court held that a defendant maintained a right to be tried by a jury whose members were selected in a nondiscriminatory manner; but, we further stated that the defendant was not constitutionally guaranteed that the jury selected had to "mirror the community and reflect the various distinctive groups in the population." *Carr v. State*, 655 So. 2d 824, 840 (Miss. 1995) (*quoting Britt*, 520 So. 2d at 1379 (Miss. 1988)). *See also Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) ("Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." (citations omitted)).

¶17. To establish a case of racial discrimination in the rejection of potential jurors, the defendant must show:

[H]e is member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is

entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire members from the petit jury on account of their race.

*Booker v. State*, 716 So. 2d 1064, 1068-1069 (Miss. 1998) (*quoting Batson*, 476 U.S. at 96 (citations omitted). As we have stated, "these components constitute the prima facie showing of discrimination necessary to compel the 'state to come forward with a neutral explanation for challenging black jurors,'" *Collins v. State*, 691 So. 2d 918, 926 (Miss. 1997) (*quoting Lockett v. State*, 517 So.2d 1346, 1349 (Miss.1987) (*quoting Batson*, 476 U.S. at 97)), thereby meeting the first step of *Hernandez v. New York*, 500 U.S. 352 (1991).

¶18. Indeed, the Supreme Court outlined the *Batson* procedure in *Hernandez*:

First, the [opponent of the strike] must make a prima facie showing that the [proponent] has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the [opponent] to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the [proponent] has carried his burden of proving purposeful discrimination.

*Sewell v. State*, 721 So. 2d at 135 (*quoting Hernandez*, 500 U.S. at 358-59); *see also McFarland v. State*, 707 So. 2d 166, 171 (Miss. 1997).

¶19. In *Thorson v. State*, 721 So. 2d 590 (Miss. 1998), we stated that a *Batson* hearing was not intended to be a full blown evidentiary hearing, so the trial court was correct in not allowing a full-blown cross-examination of the prosecutor. *Id.* Yet, the defendant is allowed to rebut the reasons which have been offered by the prosecution. *Taylor v. State*, 524 So. 2d 565, 566 (Miss. 1988). But, when the defendant offers no rebuttal, the court is forced to examine only the reasons given by the prosecution. *Bush v. State*, 585 So. 2d 1262, 1268 (Miss. 1991).

¶20. It is the duty of the trial court to determine whether purposeful discrimination has been shown, by the use of peremptory challenges. *Wheeler v. State*, 536 So. 2d 1347, 1351 (Miss. 1988). This Court further has stated that:

It is necessary that trial courts make an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors. This requirement is to be prospective in nature. Such a procedure, we believe, is in line with the "great deference" customarily afforded a trial court's determination of such issues. "Great deference" has been defined in the *Batson* context as insulating from appellate reversal any trial findings which are not clearly erroneous. Obviously, where a trial court offers clear factual findings relative to its decision to accept the State's reason[s] for peremptory strikes, the guesswork surrounding the trial court's ruling is eliminated upon appeal of a *Batson* issue to this Court.

*Hatten v. State*, 628 So. 2d 294, 298 (Miss. 1993). (citations omitted). Further, "[w]e will not reverse a trial judge's factual findings on this issue unless they appear clearly erroneous or against the overwhelming weight of the evidence." *Walters v. State*, 720 So. 2d 856, 865 (Miss.1998).

¶21. Pursuant to ***Batson***, this Court has acknowledged that there are infinite number of grounds upon which a prosecutor reasonably may peremptorily strike a juror so long as the prosecutor presents clear and reasonably specific explanations for those reasons. ***Brewer v. State***, No. 95-DP-00915-SCT, 1998 WL 410674, at \*16 (Miss. 1998) (***citing Batson***, 476 U.S. at 98 n.20). Indeed, "this Court has implicitly recognized that a prosecutor may follow his intuition so long as his judgment does not tell him that black jurors would be partial to the defendant because of their shared race." ***Brewer v. State***, No. 95-DP-00915-SCT, 1998 WL 410674, at \*16 (Miss. 1998) (citations and quotations omitted). Among the reasons accepted as race-neutral are involvement in criminal activity, unemployment, employment history, relative of juror involved in crime, low income occupation, juror wore gold chains, rings and watch, dress and demeanor. ***Foster v. State***, 639 So. 2d 1263, 1280 (Miss. 1994).

¶22. In the instant case, the defendantFlemingis black. The venire was comprised of 46 members, 10 of who were black. The final jury was comprised of 11 white jurors and 1 black juror. Eight of the potential black jurors were excused either for cause or peremptorily.

¶23. The trial court excused for cause 5 of the 10 black members. Of the remaining venire members, 3 of the remaining 5 black jurors were amongst the first 15 members considered for the jury. Of those 3 black members, the State struck members 5 and 8 while it kept member 11, whose husband is a police officer who was the victim of a shooting handled by the same district attorney's office handling the instant case. Fleming objected to such peremptory challenges. The trial court found the State's behavior to constitute a prima facie case requiring a ***Batson*** hearing. The court also ordered a ***Batson*** hearing on Fleming's objection to the State's peremptory challenge to member 22, another black member.

¶24. The State used strike S-1 on venire member 5, basing its decision on the facts that member 5 stated she knew defendant Fleming, that she stated she did not know whether or not she lived in his beat and found her response funny, that she heard gossip in the case, and that she was sitting with Fleming's family when the trial court moved the jury to the other side of the courtroom. As to the use of S-2 on member 8, the State based its reasoning on the facts that she answered no questions, that she was sitting in the area of the defendant's family, that she refused to make eye contact with the district attorney during voir dire, and that her husband is a fugitive. The judge found the State's reasons race-neutral. Fleming's objection was overruled.

¶25. Such decision by the trial court is reasonable given that the trial court is granted great deference. It is a race-neutral concern that both members 5 and 8 sat with Fleming's family; indeed such is enough evidence to infer that they may be partial to Fleming. Further, member 5 laughed at her response of not knowing whether she lived in Fleming's district; such behavior is suspicious. Also, member 8 is related to a fugitive and thus reasonably may be sympathetic to crime. Such reasons do not deal with the issue of race, so the trial court sufficiently met the requirement of a factual determination of the merits of the State's reasons. Hence, applying the aforementioned law to the facts, there is no error.

¶26. As to using S-4 on venire member 22, the State based its reasoning on the facts that she knows Fleming, that Fleming is a neighbor of hers, and that she has heard talking regarding the instant case. Once again, the judge found the State's reasons race-neutral. In ***Perry v. State***, 637 So.2d 871, 874 (Miss. 1994), this Court stated that the State provided race-neutral reasons for peremptorily challenging black females in that the State explained that the venire members were either neighbors or knew the defendant. ***Id.*** Given such a statement by this Court regarding the venire members's status as a neighbor of the

defendant, it is only reasonable for the trial court to have granted the strike of member 22. From the above analysis, it is clear that the trial court acted appropriately. There is no error.

## II. THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S CAUSAL CHALLENGE TO VENIREWOMAN, ENGLAND, BECAUSE OF HER FAMILY RELATIONS TO ONE OF HE STATE'S MAIN WITNESSES, MR. CHARLES ENGLAND.

¶27. A juror removed on a causal challenge is one against whom a cause for challenge exists such that the juror's impartiality at trial is likely affected. *See Doss v. State*, 709 So. 2d 369, 385 (Miss. 1997). Indeed, the trial judge has discretion to excuse potential jurors for cause if the court believes the juror is unable to try the case impartially. *See id.* This Court is required to reverse the trial court when this Court clearly is of the opinion that a juror was not competent. *Dennis v. State*, 91 Miss. 221, 229, 44 So. 825, 826 (1907). Indeed, this Court stated:

> The right to a trial by an impartial jury, when being prosecuted for crime, is secured by section 26, art. 3, of the Constitution. No more sacred duty can devolve on any court than the duty of seeing to it that this provision of the Constitution receive a strict enforcement.

*Id.*

¶28. In *Mettetal v. State*, 602 So. 2d 864 (Miss. 1992), we provided that:

> This Court explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror(s) was forced to sit on the jury by the trial court's erroneous ruling. *Chisholm v. State*, 529 So. 2d 635, 639 (Miss. 1988).

*Id.* at 869. Further, in *Mettetal v. State*, 615 So. 2d 600, 603 (Miss. 1993), we stated that "[t]he loss of a peremptory challenge, however, does not constitute a violation of the constitutional right to an impartial jury."*Id.* Indeed the United States Supreme Court has stated that:

> [P]eremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

*Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (citations omitted).

¶29. In the instant case, venire member no. 13, Kathy England, was challenged for cause because she is related to State witness Charles England, the chancery clerk during the time period at issue. The court denied the challenge stating that:

> She was definite about her answer though that she had not talked or discussed with him about this matter and that she could be fair and impartial. She impressed the Court with her ability to be able to do that. In light of her answers I would have to -- I would to presume something into her answers that were not in the record. Therefore I decline to excuse her for cause.

Fleming subsequently used peremptory challenge D-4 to excuse England, then proceeded to exhaust the remainder of its peremptory challenges.

¶30. The State argues that there is no list of the venire in the record, thus the issue is barred for lack of a record. Such is meritless because the record contains the voir dire and analysis of the respective venire members. Fleming argues that there were plenty of other venire members from who a jury could have been selected. Fleming reasons that England should have been causally excused, and the jury selected from the remainder of the venire.

¶31. While **Chisholm**, **Mettetal**, and their progeny specify that reversible error exists when all peremptory challenges are used such that the challenged venire member, in this case England, is forced to sit on the jury, such cases fail to grasp the full ambit of the potential harm that may stem from a trial court's failure to grant a causal challenge. Indeed, it matters not when the peremptory challenges are used, because the expected loss of a peremptory challenge leaves the party wishing to otherwise utilize such a challenge with one less opportunity to strategically try its case. **Chisholm**, **Mettetal**, and their progeny are extended such that they are met when there is at least (1) all peremptory challenges but the challenge at issue or the simple use of the peremptory challenge at issue, and (2) any incompetent juror sits. It does not matter whether the venire member at issue is placed on the jury. Indeed, it does not matter whether the venire member at issue had such a high venire number that it was questionable the venire member would be challenged, nor does it matter that the venire member was the first or last to be peremptorily challenged. It simply matters that a party's right to use peremptory challenges has been limited by the trial court's failure to remove for cause an incompetent juror.

¶32. In the instant case, all of Fleming's peremptory challenges were exercised, and the court's action limited Fleming's ability to avoid having an incompetent jury forced upon him. While the trial court should have removed venirewoman England for cause because she was related to witness Charles England, Charles was a mere document introduction witness, rather than a fact witness, so the error was harmless. Hence, while the trial court abused its discretion, such abuse was harmless, not reversible, error in this case.

**III. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR A DIRECTED VERDICT, FOR A PEREMPTORY INSTRUCTION OF NOT GUILTY, AND THE DEFENDANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE JURY VERDICT OR IN ALTERNATIVE A NEW TRIAL BECAUSE THE VERDICT OF THE JURY WAS CONTRARY TO OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE.**

¶33. In judging the sufficiency of the evidence on a motion for a directed verdict, peremptory instruction, or judgment notwithstanding the verdict, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. **See Noe v. State**, 616 So. 2d 298, 302 (Miss. 1993). If, under this standard, sufficient evidence to support a jury verdict of guilty exists, the motion for a directed verdict should be overruled. **Id**.

¶34. Once a jury has found a defendant guilty, however, this Court's authority on appeal is by law considerably constricted. **Davis v. State**, 586 So. 2d 817, 819 (Miss. 1991). When reviewing the sufficiency of the evidence, this Court looks at the lower court's ruling on the most recent occasion when such sufficiency was challenged. **Green v. State**, 631 So. 2d 167, 174 (Miss. 1994)). We must, as to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. **Cooper v. State**, 639 So. 2d 1320, 1324 (Miss. 1994). Credible evidence which is consistent with the guilt must be accepted as true. **Wetz**, 503 So. 2d at

808. The recipient of the verdict, here the State, must be given the benefit of all reasonable inferences that may be drawn from that evidence. ***Smith v. State***, 646 So. 2d 538, 542 (Miss. 1994). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. ***Wetz***, 503 So. 2d at 808. It matters not that we are not convinced beyond a reasonable doubt of the defendant's guilt. ***Davis***, 586 So. 2d at 819. Further, consideration of inconsistencies and contradictions in testimony is a question for the jury. ***Collier v. State***, 711 So. 2d 458, 462 (Miss. 1998).

¶35. We must refrain from reversal so long as there is credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense charged. ***Id.*** It equally matters not that the evidence overwhelmingly establishes defendant's guilt of other offenses. ***Id.*** We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence fails to adequately undergird conviction of the particular offense for which the defendant has been indicted and tried such that reasonable and fair-minded jurors could only find the accused not guilty. ***Id.***; ***Duplantis v. State***, 708 So. 2d 1327, 1340-41 (Miss. 1998); ***Collier***, 711 So. 2d at 461 (Miss. 1998).

¶36. This Court has stated that insufficiency and overwhelming weight of the evidence are arguments that represent motions that "are separate and distinct and perform different offices within our criminal procedural system. . . ." ***See Collier***, 711 So. 2d at 461 (***quoting May v. State***, 460 So. 2d 778, 780 (Miss. 1985)).

¶37. The motion for a new trial is a different animal than a directed verdict by the Court. ***May***, 460 So. 2d at 781. While the motion for a directed verdict presents to the trial court a pure question of law, the motion for a new trial is addressed to that court's sound discretion. ***Neal v. State***, 451 So. 2d 743, 760 (Miss. 1984). When moving for a new trial, a defendant in a criminal case invokes Rule 10.05 of our Uniform Circuit and County Court Rules:

> The court on written notice of the defendant may grant a new trial on any of the following grounds:
>
> (1) if required in the interest of justice;
>
> (2) if the verdict is contrary to law or the weight of the evidence; . . . .

***Id.*** As distinguished from a directed verdict motion, a defendant seeking a new trial is inherently not interested in a final discharge. ***May***, 460 So. 2d at 781. What is simply sought is that the jury's guilty verdict be vacated on grounds related to the weight of the evidence, not its sufficiency, and may be retried consistent with the double jeopardy clause. ***Tibbs v. Florida***, 457 U.S. 31, 39 (1982). Thus, it is not unusual to find cases where the court holds that the evidence is sufficient so that one party or the other was not entitled to directed verdict or the equivalent but, nevertheless, that a new trial in the interest of justice should be ordered. ***Clayton v. State***, 652 So. 2d 720, 726 (Miss. 1995); ***Hux v. State***, 234 So. 2d 50, 51 (Miss. 1970); ***Conway v. State***, 177 Miss. 461, 469, 171 So. 16, 17 (1936).

¶38. A greater quantum of evidence favoring the State is required for the State to withstand a motion for a new trial, as distinguished from a motion for directed verdict. ***May***, 460 So. 2d at 781. Under our established case law, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, that judge is convinced the verdict is contrary to the substantial weight of the evidence. ***Id.*** In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must consider all the evidence, not just that supporting the case for the prosecution, in the light most consistent with the verdict, and give the State all favorable inferences which may be drawn from that evidence. ***Jones***

*v. State*, 635 So. 2d 884, 887 (Miss. 1994); *see also Strong v. State*, 600 So. 2d 199, 204 (Miss. 1992). This Court will reverse only if the trial court has abused its discretion in failing to grant a new trial. *Jones*, 635 So. 2d at 887; *see also Strong*, 600 So. 2d at 204. Only where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. *Pleasant v. State*, 701 So. 2d 799, 802 (Miss. 1997). Any less stringent rule would denigrate the jury's constitutional power and responsibility in our criminal justice system. *May*, 460 So. 2d at 781-82.

¶39. In other words, Fleming's sufficiency of the evidence argument is a question of pure law and is directed to the trial court's denial of his motion for a directed verdict, while his argument that the verdict was against the overwhelming weight of the evidence is directed to the trial court's denial of his motion for a new trial and addresses the sound discretion of the trial court. *Collier*, 711 So. 2d at 461.

¶40. In the instant case, the facts are such that the jury could have found Fleming guilty. Indeed, Fleming used county funds to repair a part for which there was no county machinery the part would fit. Further, Fleming admittedly lied to the state investigator that the starter was in the Beat 4 barn while it was actually at Fleming's home on his personal John Deere tractor. Looking at the facts in a light most favorable to the State, putting a part rebuilt with government funds on one's own property reasonably could be deemed by the jury as warranting a verdict of guilty. Hence, the evidence is sufficient. Further, given such evidence, the overwhelming weight of such evidence renders reasonable a verdict of guilty.

¶41. Fleming further argues that the appropriate charge of Fleming was grounded in Miss. Code Ann. § 97-11-25 rather than Miss. Code Ann. § 97-11-31. Fleming argues that since he willingly and promptly complied and paid for the alleged defrauded amount when the demand was made by the State, he should not have been charged under § 97-11-31. Yet, the State appropriately points out that § 97-11-25 is disjunctive in that the language forbids unlawful conversion to one's own use or the failure to cure such a conversion. The State further reminds the Court that at the time of the 1991 indictment, § 97-11-25 was essentially useless due to the Court's holding in *Pennock v. State*, 550 So. 2d 410 (Miss. 1989). Indeed, in *Gerrard v. State*, 619 So. 2d 212 (Miss. 1993), the Court "expressly overrule[d] the holding in *Pennock* as it unduly narrowed the application of the embezzlement statute rendering it meaningless." *Id.* at 213. So, the State essentially had to bring the charge under § 97-11-31. Hence, as explained above, there is no error.

## CONCLUSION

¶42. For the aforementioned reasons, the trial court acted appropriately as to all issues, therefore, the judgement of the trial court is affirmed.

¶43. **CONVICTION OF FELONY CRIME OF FRAUD BY A PUBLIC OFFICIAL AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR (4) YEARS SUSPENDED FOR A PERIOD OF FIVE (5) YEARS BEGINNING UPON HIS RELEASE FROM INCARCERATION WITH ONE (1) YEAR TO SERVE AND PAY ALL COURT COSTS, FEES AND ASSESSMENTS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**