962 So.2d 691 (2007)
Larry TURNER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02069-COA.
Court of Appeals of Mississippi.
March 27, 2007.
Rehearing Denied August 21, 2007.
*692 Howard Q. Davis, Indianola, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
ROBERTS, J., for the Court:

SUMMARY OF THE CASE
¶ 1. On May 17, 2005, incident to a bench trial as requested by Larry Turner, the Washington County Circuit Court found Turner guilty of burglary of a business. On June 24, 2005, the circuit court issued a sentencing order. By that order, the circuit court found that Turner qualified for enhanced sentencing as a habitual offender pursuant to Section 99-19-81 of the Mississippi Code. Consequently, the circuit court sentenced Turner to seven years in the custody of the Mississippi Department of Corrections. On July 1, 2005, Turner filed a pro se notice of appeal. Then, on July 19, 2005, aided by counsel, Turner filed an unsuccessful motion for new trial. Aggrieved, Turner appeals and raises the following issues, listed verbatim:

*693 I. COUNSEL'S REPRESENTATION WAS DEFICIENT.
II. THE COURT ERRED IN NOT ORDERING A CONTINUANCE UNTIL THE TAPE COULD BE REVIEWED.
III. THE COURT ERRED IN CONTINUING THE SENTENCING HEARING AND IN SENTENCING MR. TURNER AS A HABITUAL OFFENDER.
IV. THE JUDGMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
V. THE CUMULATIVE ERRORS IN THIS CASE REQUIRE REVERSAL.
Finding no error, we affirm.

FACTS
¶ 2. On the night of November 5, 2004, a security company notified the Greenville Police Department that the glass door at the Supervalu grocery store had been broken. The security firm also notified David Irby, the assistant manager of Supervalu.
¶ 3. Detective Edward Crockett was the first officer at the scene. Officers Charlton Smith, Chris Orr, and Bobby Walker arrived shortly afterwards. Officer Smith later testified that someone used a piece of iron to shatter the glass door. Officers Smith, Orr, and Walker went inside Supervalu to see if anyone was still inside. They did not find anyone.
¶ 4. Meanwhile, Lieutenant Dondi Gibbs was at another location. Having heard of the break-in at Supervalu, Lieutenant Gibbs "circulated" the area and looked for possible suspects. Lieutenant Gibbs noticed a man in dark clothing. That man, later identified as Turner, had a large white garbage bag. Curious as to the contents, Lieutenant Gibbs followed Turner as he walked. By Lieutenant Gibbs's description, when he approached Turner, Turner "ran over to a brown Ford Taurus which was parked on the grass, and he had the bag in his hand. He ran behind the Taurus, he dropped the bag down, and he started walking back toward the street."
¶ 5. Lieutenant Gibbs ordered Turner to put his hands on his head. Turner complied. Lieutenant Gibbs noticed that Turner had blood on his hands and jacket. Lieutenant Gibbs put Turner in restraints and announced over the radio that he had a suspect. Officers Smith, Orr, and Walker left Supervalu and made their way to Lieutenant Gibbs's location while Detective Crockett stayed at Supervalu and photographed the broken door.
¶ 6. Lieutenant Gibbs turned Turner over to Officer Orr's custody. Lieutenant Gibbs then found Turner's white garbage bag. It was full of meat. Lieutenant Gibbs gave the meat to Officer Smith. Officer Smith put the meat in his trunk and went back to the store.
¶ 7. By the time Officer Smith made his way back to Supervalu, Irby had arrived. Irby deactivated the alarm. Irby also identified the meat labels as having come from Supervalu. Irby totaled up the value of the meat and arrived at the figure of $48.49. Officers took pictures of the meat and then, according to Officer Smith, Irby then "put the meat up."
¶ 8. Supervalu had a video surveillance system. Irby, Lieutenant Gibbs, and Detective Crockett watched the video. By Irby's description at trial, a man entered the store through the broken glass door, "took a right and went straight to the meat aisle" and put meat in a white bag. Irby later cleaned up the broken glass, boarded up the window, and reset the alarm.

PROCEDURAL HISTORY
¶ 9. On February 4, 2005, the Washington County Grand Jury returned an indictment *694 against Turner and accused Turner of burglary of the Supervalu. The indictment also alleged that Turner was a habitual offender pursuant to Section 99-19-18 of the Mississippi Code.[1]
¶ 10. On March 7, 2005, Turner filed a motion and requested "full and complete discovery pursuant to the laws and statutes of the State of Mississippi and pursuant to Rule 9.04 of the Uniform and Circuit and County Court Rules." On March 18, 2005, Turner went before the circuit court and pled "not guilty." On March 23, 2005, the district attorney's office sent the public defender's office a letter and stated, "[a]ttached please find a copy of the District Attorney's file, which includes pages 1 through 33, on your client as per your request." The record merely contains a copy of the letter, not the thirty-three pages listed as included. However, that letter also notified the public defender's office that the district attorney's office retained all physical evidence in Turner's case and that the public defender's office could view it by making arrangements with the Greenville Police Department.
¶ 11. On May 17, 2005, Turner went before the Washington County Circuit Court. Turner requested a bench trial. As will be discussed below, when the circuit court asked the parties whether they were ready for trial, counsel for Turner notified the circuit court that he had only learned of the existence of the videotape "five minutes ago." We will discuss this in much greater depth in Turner's first issue. Here, we can summarize by saying that the circuit court attempted to give Turner and his counsel an opportunity to view the videotape.
¶ 12. The prosecution called four witnesses: Officer Smith, Detective Crockett, Lieutenant Gibbs, and Irby. Afterwards, Turner filed an unsuccessful motion for directed verdict. Turner then announced that he would not be calling any witnesses. Accordingly, the circuit court deliberated and found Turner guilty.
¶ 13. The circuit court then proceeded with the habitual offender portion of Turner's indictment. The circuit court continued that portion of Turner's trial to June 24, 2005. On that date, the circuit court found that Turner met the criteria for sentencing as a habitual offender pursuant to Section 99-19-81. Accordingly, the circuit court sentenced Turner to seven years in the custody of the MDOC.
¶ 14. On July 1, 2005, Turner filed a pro se notice of appeal. However, on July 19, 2005, aided by counsel, Turner filed an unsuccessful motion for new trial. On January 5, 2006, the circuit court issued its "Final Order and Setting of Appeal Bond." Within that order, the circuit court noted that it had overruled Turner's motion for new trial. Aggrieved, Turner appeals.

ANALYSIS
I. COUNSEL'S REPRESENTATION WAS DEFICIENT.
¶ 15. In his first issue, Turner claims that he experienced ineffective assistance of counsel. However, Turner claims that his counsel was ineffective in the way he handled the videotape of the surveillance footage.
*695 ¶ 16. As promised, a more detailed examination of the pertinent facts is necessary. When the circuit court asked whether the parties were ready for trial, both the prosecution and Turner's attorney announced that they were ready. The circuit court then asked, "[i]s there anything we need to take up before we begin?" Counsel for Turner answered:
Your Honor, there is one thing. We haven't spoken with or received any summary of a statement from the store manager, the store representative, from Supervalu, so we would object to his being able to take the stand. Also there is a video tape that we learned of this morning. We object to that coming into evidence as well, since we haven't even heard of it before five minutes ago.
The circuit court gave Turner's attorney an opportunity to interview Irby and to watch the video. Twenty minutes later, counsel for Turner announced that he spoke with Irby. He also announced that the video was "sped up" and that it "was too fast for viewing" so Irby went to Supervalu to "get a better copy of that tape." Counsel for Turner then said, "I just as soon we go ahead and begin, and if and when they return with that tape, we can pause briefly."
¶ 17. The prosecution proceeded to put on its proof. As mentioned, the prosecution called Officer Smith, Detective Crockett, and Lieutenant Gibbs as its first three witnesses. Detective Crockett and Lieutenant Gibbs mentioned the video only in that they testified that they watched it. Officer Smith did not mention the video at all.
¶ 18. The prosecution called Irby as its final witness. The prosecution submitted the videotape during Irby's direct testimony. Irby testified that he recognized the videotape because it came from Supervalu and he got it from there around lunchtime on the date of trial. When the prosecution moved to introduce the videotape into evidence, counsel for Turner stated, "Just renew our objection from prior to this proceeding about the timeliness of its being produced." The circuit court overruled that objection.
¶ 19. Here, Turner does not claim that the circuit court erred when it allowed the prosecution to submit the video. Rather, Turner claims his attorney was ineffective. To establish a claim of ineffective assistance of counsel, Turner must demonstrate: (1) a deficiency of his counsel's performance that is (2) sufficient to constitute prejudice to his defense. Swington v. State, 742 So.2d 1106, 1114(¶ 22) (Miss. 1999) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Walker v. State, 703 So.2d 266, 268 (Miss.1997)). In deciding whether Turner's counsel rendered ineffective assistance, this Court examines the totality of the circumstances surrounding the case. Swington, 742 So.2d at (¶ 22). Turner faces a "strong but rebuttable presumption that his counsel's conduct falls within a broad range of reasonable professional assistance." Id. at (¶ 23). To overcome this presumption, Turner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
¶ 20. According to Turner, his attorney should have requested a continuance. Turner claims his attorney should not have proceeded with trial having not reviewed the videotape. Further, Turner claims that his attorney should have reviewed the tape prior to cross-examining witnesses.
¶ 21. The problem with Turner's argument is that neither Officer Smith, Detective *696 Crockett, nor Lieutenant Gibbs testified as to the videotape. Detective Crockett and Lieutenant Gibbs mentioned that they saw it, but they did not testify as to anything depicted on the tape. An additional problem is that the record is insufficient to resolve Turner's claim that his attorney did not review the video prior to cross-examining any of the prosecution's first three witnesses. Irby testified that he brought the tape back "around lunchtime." True enough, Officer Smith testified before lunch, but Detective Crockett and Lieutenant Gibbs testified after lunch. So while its clear that Turner's attorney did not see the video prior to cross-examining Officer Smith, it is not quite so clear that he did not watch the video before he cross-examined Detective Crockett or Lieutenant Gibbs. The record is silent as to whether he watched the video "around lunchtime" or at any other time. Further, counsel for Turner had the option of recalling the prosecution's witnesses to question them regarding the events depicted on the videotape.
¶ 22. "We should reach the merits on an ineffective assistance of counsel issue on direct appeal only if `(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" Pittman v. State, 836 So.2d 779(¶ 39) (Miss.Ct.App.2002) (quoting Colenburg v. State, 735 So.2d 1099, 1101 (Miss.Ct.App.1999)). The parties have not entered any such stipulation, and the record does not affirmatively show ineffectiveness of constitutional dimensions. Rather, the state of the record renders it impossible for us to sufficiently examine Turner's allegations. Accordingly, Turner may raise his ineffective assistance of counsel claim in a post-conviction relief proceeding, if he so chooses.
II. THE COURT ERRED IN NOT ORDERING A CONTINUANCE UNTIL THE TAPE COULD BE REVIEWED.
¶ 23. Turner's second issue also centers on the videotape. Here, however, he does not claim his attorney was ineffective. Instead, he claims the circuit court erred when it did not continue Turner's trial until counsel for Turner had an opportunity to review the tape. According to Turner, the circuit court should have granted a continuance, rather than merely granting defense counsel an opportunity to review the tape.
¶ 24. Turner cites URCCC 9.04(I). Turner draws particular attention to the following language from Rule 9.04(I):
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows: 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
¶ 25. Here, Turner's attorney knew of the undisclosed evidence before the precise moment in trial when the prosecution attempted to introduce it. The circuit court *697 gave Turner's attorney an opportunity to interview Irby. As we discussed in the issue above, the record before us is silent as to whether counsel for Turner had an opportunity to review the videotape before the prosecution submitted it during Irby's direct testimony. Counsel for Turner did not claim unfair surprise or undue prejudice; nor did he seek a continuance or a mistrial. Whether that is ineffective assistance of counsel is not the subject of this issue. Regardless, we find that Turner waived this issue on appeal. Porter v. State, 869 So.2d 414(¶ 21) (Miss.Ct.App. 2004).
III. THE COURT ERRED IN CONTINUING THE SENTENCING HEARING AND IN SENTENCING MR. TURNER AS A HABITUAL OFFENDER.
¶ 26. Turner's third issue stems from the circuit court's decision to continue the habitual offender portion of Turner's trial. Turner's entire argument under this issue is as follows:
The entire Code of Judicial Conduct is based upon preserving "the integrity and independence of the Judiciary." [Canon 1] Canon 2 says that a Judge must "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." While I have all the respect in the world for the Trial Judge in this case and believe he tried to be fair, the perception, particularly to Larry Turner, is that, under the facts of this case, the Judge was not acting fairly and impartially.
The State announced that it was ready to proceed with the sentencing phase, and, when it was not able to meet its burden, the Court continued the matter on its own motion over the objection of the Defendant. Mr. Turner's perception is even stronger when linked to his perception of his attorney's lack of effectiveness, being such that he notified the Public Defender's Office that he felt they had violated his rights to effective representation and they had, in response, filed a motion to be relieved, which, as mentioned above, was not granted until after the sentencing phase.
Under the facts of this case, the Judge was not acting in a fair and impartial manner.
(citations to the record omitted).
¶ 27. Turner cites no authority to support his argument. "It is the duty of an appellant to provide authority in support of an assignment of error." Hoops v. State, 681 So.2d 521, 526 (Miss.1996). Accordingly, this issue is procedurally barred.
IV. THE JUDGMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
¶ 28. Turner attempts to attack the weight of the evidence regarding his conviction of burglary of a business and his sentencing as a habitual offender. A motion for a new trial seeks to vacate the judgment on grounds related to the weight of the evidence. Verner v. State, 812 So.2d 1147(¶ 6) (Miss.Ct.App.2002). We may only reverse the circuit court's decision to overrule a motion for a new trial if the circuit court abused its discretion. Smith v. State, 868 So.2d 1048(¶ 11) (Miss.Ct.App. 2004).

A. Turner's Conviction for Burglary of a Business
¶ 29. Turner claims no evidence showed that he broke into Supervalu. Turner draws attention to the evidence that (a) Irby testified that Turner could have possibly purchased the meat legitimately or received it from someone who *698 had, (b) Turner's fingerprints were not found at the scene, (c) no one saw Turner near the Supervalu at the time of the break-in, and (d) although Officer Gibbs testified that Turner had blood on his hands and his jacket to imply that Turner cut himself either entering or exiting the store, there was no evidence of blood at the scene.
¶ 30. While Turner may be technically correct on every point, we do not find that the circuit court abused its discretion when it overruled Turner's motion for new trial. Supervalu's video surveillance system showed the glass door as someone broke it and entered the store. It also showed a man in dark clothing entered through the broken glass and filled a white bag with meat. Turner was apprehended within a very short time period afterward. Turner had on dark clothing. Turner also had a white bag full of meat.
¶ 31. This Court must consider all the evidence in the light most consistent with the verdict and we must give the State all favorable inferences which may be drawn from that evidence. Fleming v. State, 732 So.2d 172(¶ 38) (Miss.1999). As such, we do not find that the circuit court abused its discretion.

B. Turner's Enhanced Sentence as a Habitual Offender
¶ 32. The prosecution called Sharon Parish, a probation parole officer with the Mississippi Department of Corrections. During Parish's testimony, the prosecution submitted what was described as "three certified copies of prior sentencing orders." According to the record, one sentencing order referenced a burglary conviction from January of 1985, another referenced a burglary conviction from 1981, and the third referenced yet another burglary conviction from 1981.
¶ 33. Introduction of original or certified copies of commitment papers is the commons means to demonstrate prior convictions for purposes of enhanced sentencing as a habitual offender. Sims v. State, 775 So.2d 1291(¶ 14) (Miss.Ct.App. 2000). Accordingly, we find that the circuit court did not abuse its discretion.
V. THE CUMULATIVE ERRORS IN THIS CASE REQUIRE REVERSAL.
¶ 34. We can find no individual error, much less a cumulative effect from those nonexistent errors. As such, we find no merit to this argument.
¶ 35. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A BUSINESS AND SENTENCE OF SEVEN YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] The indictment alleged that Turner had been "previously convicted of burglary on February 2, 1981 in cause number 17-370 in the Circuit Court of Washington County, Mississippi and . . . sentenced to serve a term of 1 year or more in the custody of MDOC; and . . . Business Burglary on September 11, 2003 in cause number 2003-098 in the Circuit Court of Washington County, Mississippi and . . . sentenced to serve a term of 3 years in the custody of MDOC."