770 So.2d 1025 (2000)
Gregory Paul CARR, Appellant
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01115-COA.
Court of Appeals of Mississippi.
October 31, 2000.
*1026 Johnnie E. Walls, Jr., Eric Charles Hawkins, Greenville, Attorneys for Appellant.
*1027 Office of the Attorney General by John R. Henry, Jr., Attorneys for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND MOORE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Gregory Paul Carr has appealed his conviction of burglary of a dwelling. Among other issues raised in his appeal, Carr claims that evidence linking him to the burglary should have been suppressed because it had been gathered in an unreasonable warrantless search of his person. Additionally, he raises the issue that the State's case failed because the prosecution did not prove beyond reasonable doubt that the building broken into was a dwelling house within the meaning of this state's burglary statute. We find both these issues to have merit and, therefore, conclude that Carr's conviction must be reversed.

I.

Facts
¶ 2. Officer Larry Miller of the Greenville Police Department was on duty in the early morning hours of June 15, 1997, when he received a call that there had been an auto burglary. Patrolling in the area where the crime allegedly occurred, Officer Miller and another officer observed the defendant, Gregory Paul Carr, riding in the street on a bicycle. Officer Miller testified that Carr had a cordless telephone in his hand and had a yellow flashlight protruding from one of his pants pockets. Despite the evident suspicion that Carr's presence under those circumstances reasonably aroused in the officers, there is no suggestion that there was any cause to believe that the items viewed on his person were obtained in the vehicular burglary. To the contrary, the evidence indicates that the vehicle burglarized was, in fact, Officer Miller's personal vehicle and that he was already aware of what contents were missing as a result of that break-in.
¶ 3. Officer Miller asked Carr to stop, and Carr appeared to be obeying the request. However, as Miller approached, Carr suddenly abandoned his bicycle and fled on foot. The officers gave chase, captured Carr, searched him, and detained him after discovering a quantity of gold jewelry and a checkbook bearing the name of another person concealed in his clothing.
¶ 4. A subsequent inspection of the address printed on the checks revealed the previously-unknown fact that the home had been broken into and the contents of the home ransacked. The owner of the home, Gaston Woodson, was contacted and ultimately identified the jewelry, the telephone and the flashlight as being property belonging to him or family members and kept at the residential property.
¶ 5. Based on these facts, Carr was indicted for burglary of a dwelling, tried and convicted.

II.

The First Issue: Suppression of Physical Evidence
¶ 6. Carr first claims that the trial court erred in refusing to suppress the various items discovered on his person since they were seized in an unreasonable search of his person. He alleges that the search was without his consent and was undertaken after he had been arrested without a warrant and without probable cause. Carr filed a suppression motion to that effect. The trial court denied the suppression motion in a summary order that contained no findings of fact nor conclusions of law beyond the observation that the motion "is not well taken." The order recites that there was a hearing on the motion; however, there is no transcript of such a hearing in the record.
¶ 7. At first blush, this absence of the record would seem to bar consideration of Carr's claim based on his inability to overcome the presumption of correctness that attaches to any ruling by the *1028 trial court. Hansen v. State, 592 So.2d 114, 127 (Miss.1991); Doby v. State, 557 So.2d 533, 536 (Miss.1990). However, in Stewart v. State, the Mississippi Supreme Court declined to permit an appellant to supplement the record to include the transcript of a suppression hearing omitted by oversight, finding that the appellant
was in no wise prejudiced by the failure to include the transcript of the testimony, if any, taken at the preliminary hearing on the Motion to Suppress, because the testimony of all witnesses at the full trial was included in the record....
Stewart v. State, 377 So.2d 613, 614 (Miss. 1979). Although it is not entirely clear from reading the Stewart opinion, we interpret it to mean that, on appeal, the Court may consider evidence produced at trial that bears on the suppression issue when assessing the correctness of the court's pre-trial ruling.
¶ 8. Reviewing the evidence in that light, we note that it is largely beyond dispute that the officers had no probable cause to arrest Carr at the time he was observed riding a bicycle on a public street. Nevertheless, it is apparent to this Court that police officers observing an individual at large at approximately 2:30 in the morning in an area where a recent crime had been committed would be entitled to undertake a brief investigatory stop to determine the circumstances of that individual's presence in that area. Floyd v. City of Crystal Springs, 749 So.2d 110 (Miss.1999). The right to compel Carr to undergo such a brief investigatory stop was not diminished by the fact that Carr suddenly fled when commanded to stop, so that the officers were justified in pursuing and detaining him against his will, at least until the legitimacy of his presence under the circumstances could be resolved. Shannon v. State, 739 So.2d 468 (¶ 13) (Miss.Ct.App.1999).
¶ 9. It is likewise certain that, if officers have some reasonable basis of concern that a detainee might be armed, the detainee may be subjected to a pat-down for dangerous weapons. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Graves v. State, 708 So.2d 858 (¶ 22) (Miss.1997). The evident problem in this case is that the search of Carr's person that produced much of contraband was, beyond question, substantially more intrusive than a Terry patdown for weapons. There is no testimony to support a legitimate conclusion that a weapons patdown produced evidence of a possible weapon concealed on Carr's person that would support the more intrusive requirement that Carr disclose all items then held by him on his person.
¶ 10. The fact, standing alone, that Carr fled rather than voluntarily submit to the officer's verbal command to stop justified further investigatory work by the officer, but it did not give rise to reasonable cause to arrest. Absent a lawful arrest, there could, of course, be no search incident to arrest. Carr's motion to suppress those items discovered as the result of his detention and involuntary search had merit and should have been granted. Even as to those items in plain view prior to Carr's detention, which included the telephone and the flashlight, officers had no reason to conclude that they constituted contraband and their seizure from his person without a warrant and without probable cause was an unreasonable intrusion upon his right to be secure in his person guaranteed by the Fourth Amendment.
¶ 11. Having concluded that Carr was entitled to have the evidence seized from his person suppressed, our obligation would normally be to reverse and remand his conviction. This would concede the possibility, however unlikely, that Carr could be retried for the same crime without the incriminating contraband. This possibility requires that we consider Carr's other issue that attacks the sufficiency of the evidence as to a critical element of the crime since, if we determine that issue to have merit, we would necessarily reverse and render Carr's conviction.

*1029 III.

The Second Issue: Sufficiency of the Evidence
¶ 12. Carr urges that the State failed to prove that the building which he was alleged to have burglarized was a dwelling within the meaning of the laws relating to burglary. Section 97-17-23 of the Mississippi Code defines the crime of burglary as the act of "breaking and entering the dwelling house ... of another ... with intent to commit some crime therein...." Miss.Code Ann. § 97-17-23 (Supp.1999). Case law makes clear that, in order to constitute the crime of burglary of a dwelling, the structure broken into must be in present use as a residence for someone. Wilkerson v. State, 724 So.2d 1089 (¶¶ 17-18) (Miss.Ct.App.1998); Scott v. State, 62 Miss. 781 (1885). By way of example, a dwelling under construction but not yet completed for occupancy has been held not to be a dwelling for purposes of burglary. Watson v. State, 254 Miss. 82, 179 So.2d 826, 827 (1965). Likewise, when the evidence demonstrated that the former residents of the dwelling had moved away with no intention to returneven though only a short time prior to the crimethe supreme court held that the structure had lost its character as a dwelling house. Gillum v. State, 468 So.2d 856, 859 (Miss. 1985).
¶ 13. In this case, the evidence is uncontradicted that the owner of the home, together with his wife, had permanently ceased to live in the structure and had moved to another county where they were living temporarily in a camper on-site while they completed construction work on a new home. There was no evidence faintly suggesting that the owners had any intention of returning to the Greenville residence and resuming their residence there. There was some testimony that the owners' daughter had been living in the home while she worked as a schoolteacher in the Greenville area, but the only evidence concerning the daughter's residency in the home was supplied by her father, who said:
My daughter had been staying at the house, and she hadI believe she had gone up there and she wassheschool was out. She was teaching school here, and she was out. So she had been gone from the house, oh, I don't know how many days, probably a week before that.
¶ 14. There is authority for the proposition that a temporary absence from the dwelling, even if of long duration, does not deprive the structure of its character as a dwelling house if there is any evidence that the occupant intends ultimately to return and resume living there. Course v. State, 469 So.2d 80, 82 (Miss.1985). However, there is no evidence in this record to support an inference that either the owners or their daughter had manifested any intention to return to this particular residence and occupy it as their residence. Because of the absence of such evidence, we need not reach the related question of whether evidence that the owner's apparently-emancipated daughter may have been living in the house would prove the charge in the indictment that Carr had broken into "the dwelling house of Gaston Woodson."
¶ 15. Proof that the structure was, at the time of alleged crime, a dwelling house was an essential element of the crime as to which the State had the burden of proof beyond a reasonable doubt. Ward v. State, 726 So.2d 223 (¶ 10) (Miss. Ct.App.1998) ("To support a conviction for burglary, the State must present sufficient evidence to establish each element of the crime."). The State, as a matter of law, failed to offer any evidence tending to establish that the structure in question was "the dwelling house of Gaston Woodson" as charged in the indictment, or that it was the dwelling house of any member of Woodson's family.
¶ 16. We observe that Carr's counsel did not specifically raise this defect in the State's proof in his motion for directed verdict nor in a motion for a JNOV. In *1030 fact, the issue is presented on appeal as an attack on the weight, as opposed to the sufficiency, of the evidence of Carr's guilt. Nevertheless, this failing of the State's proof is so fundamental that we conclude it would be a substantial miscarriage of justice to permit a burglary conviction to stand on this proof and we, therefore, note the issue as plain error. Moore v. State, 755 So.2d 1276 (¶ 9) (Miss.Ct.App.2000); Taylor v. State, 754 So.2d 598 (¶ 11) (Miss. Ct.App.2000).
¶ 17. Finally, we observe that burglary of a structure other than a dwelling house is not a lesser-included offense of burglary of a dwelling house. Smith v. State, 725 So.2d 922 (¶ 16) (Miss.Ct.App. 1998). That being the case, this Court has no alternative other than to reverse and render the conviction in this case.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED AND RENDERED. COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.