808 So.2d 979 (2001)
Quentin Izel BESSENT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00947-COA.
Court of Appeals of Mississippi.
September 18, 2001.
Rehearing Denied December 4, 2001.
Certiorari Denied February 28, 2002.
*981 Dan W. Duggan, Jr., Brandon, Attorney for Appellant.
Office of the Attorney General, by Charles W. Maris, Jr., Jackson, Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES and MYERS, JJ.
MYERS, J., for the Court:
¶ 1. Quentin Izel Bessent was convicted in the Circuit Court of Rankin County of possession of cocaine with intent to distribute in violation of Miss.Code Ann. § 41-29-139(b)(1) (Rev.2000). At the conclusion of his trial, Bessent moved for a directed verdict, judgment notwithstanding the verdict and/or a new trial. Judge Samac S. Richardson denied all motions and Bessent appeals on the following issues:
1. Whether trial court erred by failing to suppress illegally obtained evidence.

*982 2. Whether the trial court erred by failing to grant defendant's motion for directed verdict and motion for judgment notwithstanding the verdict and/or the verdict was against the weight of the evidence.

FACTS
¶ 2. Quentin Izel Bessent was pulled over by Rankin County Sheriffs Deputy Shannon Penn. Penn drove beside Bessent on I-20 westbound to pace him and decided Bessent was traveling at 78 miles per hour in a 70 mile per hour zone. After being stopped by Penn, Bessent was asked to exit his truck and step to the rear of the truck. At some point Penn allowed Bessent to return to his truck to turn the ignition off. Penn felt it necessary to search Bessent, upon his return, to make sure he did not have any weapons.
¶ 3. When Penn came to Bessent's groin area, he felt an object "that wasn't part of his (Bessent's) personal body." At that point Bessent ran. Officer Penn said he saw Bessent remove an object from his pants and throw it. Bessent was then caught and Officer Penn pulled a gun on him and placed him in handcuffs. Backup officers had arrived by then and the other officers found an oblong shaped package with black tape around it. Upon cutting open the package, they discovered that it was further bound with electrical tape and a fabric softener. Inside of that was a white powder.
¶ 4. In his testimony, Officer Penn contended that Bessent voluntarily signed a consent form allowing for the search of his car. Bessent asserts that Penn told him he had to sign the consent form or he would get the "dog out of the car." Bessent was then allowed to turn his car off. They both agree that Penn then told Bessent that he was going to search him for officer safety. Penn said his reasoning behind his belief that a search was necessary was that Bessent was acting nervous, his veins were jumping up and down and his cheeks were jittery. Bessent points out that most people are nervous when pulled over by a police officer.
¶ 5. They differ on what happened thereafter. Penn says when he got to the groin area he felt a "large object that was not part of his (Bessent's) personal body," and asked Bessent to identify the object. Bessent says that Penn grabbed his penis. Bessent testified that he then jumped away and ran far enough away to get some distance, about ten feet, between him and Penn. Penn testified that as Bessent ran, he tossed something from his pants. After a lengthy search of the area, the officers found an oval shaped package which was later found to contain cocaine. Bessent testified that Penn and another officer found a package only when Penn and another officer went behind a fence together. Bessent insists that the drugs were not his.
¶ 6. Bessent filed a motion to suppress the drug evidence prior to trial. Bessent says the trial court made no findings of fact regarding its denial of his motion. Bessent implores this Court to remand for such findings or conduct a de novo review of the matter.

STANDARD OF REVIEW
¶ 7. In criminal appeals, a presumption of correctness attaches to any ruling by the trial court. Carr v. State, 770 So.2d 1025, 1027 (¶ 7) (Miss.Ct.App.2000), citing Hansen v. State, 592 So.2d 114, 127 (Miss. 1991).
¶ 8. When reviewing a trial court's ruling on a suppression hearing, we must assess whether substantial credible evidence supports the trial court's finding considering the totality of the circumstances. Price v. State, 752 So.2d 1070 *983 (¶ 9) (Miss.Ct.App.1999), citing Magee v. State, 542 So.2d 228, 231 (Miss.1989). The admissibility of evidence lies within the trial court's discretion and will only be reversed if this discretion is abused. Crawford v. State, 754 So.2d 1211, 1215 (¶ 7) (Miss.2000).
¶ 9. We must also address the issues of whether the trial judge was wrong to deny Bessent's motion for a new trial and his motion for a judgment notwithstanding the verdict. For this we rely on ensconced Mississippi case law.
The standard for reviewing denial of a new trial goes to the weight of the evidence and the standard for reviewing the denial of a JNOV is whether or not the evidence was sufficient to warrant such and whether fair-minded jurors could have arrived at the same verdict. The standard for a JNOV is not whether it was against the overwhelming weight of the evidence.
White v. State, 761 So.2d 221, 224 (¶ 10) (Miss.Ct.App.2000).
¶ 10. To discern whether the jury verdict is against the weight of the evidence, we must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Crawford, 754 So.2d at 1222 (¶ 30), citing Collier v. State, 711 So.2d 458, 461 (Miss.1998) (other citations omitted). In order to mandate a new trial, the verdict must be "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction `unconscionable injustice'" Crawford, 754 So.2d at 1222 (¶ 30), citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).

DISCUSSION

1. Whether trial court erred by failing to suppress illegally obtained evidence.
¶ 11. Before turning our attention to the delineated issues presented by Bessent, we must address the issue he slipped in at the beginning of his brief, alleging that the trial court made no findings of fact regarding his suppression hearing and therefore this Court should conduct a de novo review of the record. The State's brief aptly dealt with this assertion and we agree that issues like this have been addressed by the case, Riddle v. State, 580 So.2d 1195 (Miss.1991). In Riddle, the supreme court acknowledged that where the trial court has failed to make specific findings of fact, the Court will recognize findings which are "fairly implicit" in the trial court's ruling. Riddle, 580 So.2d at 1200. After reviewing the record, we noticed that Mr. Bessent made every possible attempt to impede the progress of his trial throughout the long and arduous process. At one moment he asserted one proposition and at another he would assert the opposite. He contradicted himself, the judge, the prosecutors and his many attorneys. It is evident that the prosecutor and the current attorney presented their arguments to the judge based on the law regarding the suppression of evidence. The judge denied the motion. The defense had the opportunity to object during trial, which they did. There is nothing more to consider here.
¶ 12. Now, we turn to the question of the legality of the search and seizure of items. In a recent Mississippi case, Milliorn v. State, 755 So.2d 1217 (Miss.App.1999), the validity of a police officer's search and subsequent seizure of items in possession was succinctly developed.
Where an unreasonable search and seizure is conducted, no evidence obtained, no matter how probative of guilt of the accused, may be introduced at the trial of the defendant. Jackson v. State, 418 *984 So.2d 827, 829 (Miss.1982). The supreme court has noted that the "Fourth Amendment's rule against warrantless searches is subject to a few specifically established and well delineated exceptions." Graves v. State, 708 So.2d 858 (¶ 22)(Miss.1997)(quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Among the most important exceptions is the consent of the person with control over the premises to be searched, Townsend v. State, 681 So.2d 497, 501 (Miss.1996). The totality of the relevant circumstances must be examined in determining whether consent was voluntarily made, a decision initially for the trial judge who is best able to adjudge the credibility of those testifying. Jones v. State, 607 So.2d 23, 28 (Miss.1991).
Id. at 1221 (¶ 13).
¶ 13. Bessent signed a consent form which he alleged was obtained through coercion. Nevertheless, the jury heard this evidence and clearly did not agree that Bessent's assertion was convincing. Bessent then allowed Penn to conduct a pat down search for weapons. There is no contradictory testimony as to the voluntariness of this pat down. Both Penn and Bessent testified that Bessent agreed to this search. Penn said that he felt that Bessent's demeanor made him suspicious and that is why he asked Bessent if he could pat him down.
While the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure, (citations omitted) or that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances. (citations omitted) But we deal here with... [the] necessarily swift action predicated upon the on-the-spot observations of the officer on the beatwhich historically has not been, and as a practical matter could not be subjected to the warrant procedure. Instead, the conduct involved ... must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.
Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Moreover, a protective seizure and search of a person for weapons, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. (citations omitted). The sole justification of such a search is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for an assault against the police officer.
Id.
¶ 14. During Penn's pat down of Bessent he felt something best described as odd within the groin region of Bessent's body. Determining that it probably was neither a part of Bessent's body nor a weapon, Penn inquired as to the nature of the object. At that point, the testimony of both agrees, that Bessent suddenly jerked away from the officer and quickly moved out of his reach. Penn said Bessent threw the object that was in his pants into the grass. Bessent said he got away, turned around to face the officer and found a gun pointed at his head.
¶ 15. The U.S. Supreme Court in Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), distinguished between custodial arrests for traffic violations and the situation where a non-custodial citation is issued and said there is no authority for a "search incident to citation." Id. Absent some affirmative indication *985 that the officer intended to actually take Bessent into custody solely for traveling 78 mph in a 70 mph zone, we cannot label this search as one incident to arrest.
¶ 16. In Carr v. State, 770 So.2d 1025, 1028 (Miss.Ct.App.2000), we faced a similar search in which the evidence was ultimately suppressed. In that case, Carr was riding a bicycle down the street at an early morning hour, when he was spotted by two police officers. In Carr's hand was a cordless telephone and a yellow flashlight was visible from his shirt pocket. Carr appeared to be following the officers command to allow a brief investigatory stop to discern the reason for Carr's presence in that area where a recent crime had been committed, when he broke and ran. Upon catching him, the officers searched his person and found several items that had been stolen in the recent burglary.
¶ 17. The problem arises when the line of acceptable searches has been crossed. The court in Carr held that it was unreasonable for the officers to go further than a Terry pat down for weapons when searching Carr simply because he did not stop at their command. His running away, "did not give rise to reasonable cause to arrest. Absent a lawful arrest, there could, ... be no search incident to arrest." Carr, 770 So.2d at 1028. Bessent was under no obligation to identify the object and could have told the officer it was none of his business. Any order by the officer to produce the object, absent compelling evidence that the officer had reason to fear it was a weapon, would have been suppressed as evidence obtained in an unreasonable search. Id.
¶ 18. Mississippi's definition of arrest is found in Jackson v. State, 335 So.2d 116 (Miss.1976).
An arrest is not consummated until there has been a taking of possession of a person by manual caption, or submission on demand; and although a manual touching is unnecessary unless there is resistance to an arrest, there must be restraint of a person to establish an arrest.
Id. at 118-19, (quoting Fondren v. State, 253 Miss. 241, 259, 175 So.2d 628, 636 (1965)).
¶ 19. In the case of Harper v. State, 635 So.2d 864 (Miss.1994), the suspect threw down a rock of cocaine as he ran away from the police. He had not been placed under arrest at the time when he ran. An officer picked it up and it was admitted as evidence. Our supreme court followed the ruling of the U.S. Supreme Court in California v. Hodari, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), when it held that evidence seized after being abandoned by a suspect is not the fruit of an illegal seizure. The court held that "Harper was not seized or arrested when he discarded the drugs. He was not restrained or stopped at the time he threw down the cocaine, and the cocaine, therefore was abandoned and not the fruit of an unlawful seizure or arrest." Harper, 635 So.2d at 867.
¶ 20. One way or the other, at the time of the pat down, Bessent was not under arrest and therefore not required to explain or produce the object in his pants. The officer had no authority to demand production without compelling evidence the officer had reason to fear it was some sort of weapon. The evidence was not directly the result of a search. Rather, the evidence was voluntarily abandoned by Bessent in the moments after he took flight. We do not agree with Bessent's assertion that he is entitled to the protection of the law against unreasonable searches simply because he may have quickly abandoned the evidence on the mistaken belief that he could be compelled *986 to produce it on the officer's direction. We find no merit in this argument.

2. Whether the trial court erred by failing to grant defendant's motion for directed verdict and motion for judgment notwithstanding the verdict and/or the verdict was against the weight of the evidence.
¶ 21. In the trial of this case, the testimony of the two main witnesses contradicted each other. Since there were only three witnesses, Bessent, Penn and the crime laboratory witness, the jury was faced with deciphering the validity and veracity of Bessent and Penn. When a jury sits for a trial, its role is to evaluate the witnesses as to their veracity and the viability of the testimony. "Where there is conflicting testimony, the jury is the judge of the credibility of the witnesses." Wetz v. State, 503 So.2d 803, 812 (Miss.1987).
¶ 22. Bessent says there is no way he was speeding because he used his cruise control to regulate his speed and interjects that racial profiling was the reason he was stopped. Penn says he paced Bessent and found that Bessent was speeding. Bessent claims to have been coerced into signing a consent to search, while Penn says the signature was voluntary. Bessent testified that he did not have any drugs on his person and that he did not run from the officer. Penn, predictably, testified to the opposite. While both viewpoints present interesting questions, neither of them offers unquestionably logical explanations as to the events that took place on I-20 on that evening. However, it is merely our place to review the record, not retry the case.
¶ 23. Since Bessent has lumped the matters of legal sufficiency of the evidence and overwhelming weight of the evidence together we will address the clear differences in the two. A JNOV concentrates on the legal sufficiency of the evidence and a motion for a new trial focuses on the weight of the evidence presented at trial.
Where a defendant has ... moved for a judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidencenot just the evidence which supports the States's case.... The evidence which supports the case of the State must be taken as true.... The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence.... If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the ... judgment n.o.v. is required. On the other hand, if there is substantial evidence opposed to the request or motionthat is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard. reasonable fair minded men in the exercise of impartial judgment might reach different conclusionsthe request or motion should be denied.
White v. State, 732 So.2d 961, 966 (¶ 21) (Miss.1999), citing Weeks v. State, 493 So.2d 1280, 1282 (Miss.1986)(quoting Gavin v. State, 473 So.2d 952, 956 (Miss.1985)).
¶ 24. To consider the weight of the evidence, this Court looks to the case of McClain v. State, 625 So.2d 774, 781 (Miss.1993).
[T]he challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally, such challenge necessarily invokes Miss. Unif.Crim. R. of Cir. Ct. Prac. 5.16. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted *987 except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the state.
Id.
¶ 25. Bessent has presented neither a sound argument that reasonable fair-minded jurors would have found him not guilty of the charges against him, nor did he show that the denial of a new trial sanctioned an unconscionable injustice to him. Therefore, we hold this issue to be without merit.
¶ 26. However, we will make mention that it seems unusual that someone would agree to a search of one's person and/or automobile when one has something to hide. However, all we are able to do at this juncture is to comment on the oddness of the situation. The jury found Mr. Bessent guilty and we find no evidence to the contrary in the record promoting the reversal or remand of the verdict based on the perceived baffling circumstances in this situation. Therefore, we affirm the verdict of the Circuit Court of Rankin County.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO PAY RESTITUTION TO RANKIN COUNTY, MISSISSIPPI FOR COSTS INCURRED AND FINE OF ONE MILLION DOLLARS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, AND CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BRANTLEY, J., NOT PARTICIPATING.