883 So.2d 115 (2004)
Clifton CAMPBELL, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01448-COA.
Court of Appeals of Mississippi.
April 27, 2004.
Rehearing Denied July 20, 2004.
Certiorari Denied September 30, 2004.
*116 Thomas Richard Mayfield, Thomas E. Royals, Jackson, attorneys for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before KING, P.J., THOMAS and MYERS, JJ.
KING, P.J., for the Court.
¶ 1. Clifton Campbell and Josh Kirk Davis were indicted for the capital murder of William Arnold. The underlying felony charge was burglary of an inhabited dwelling. The charges were severed and Campbell and Davis were tried separately. *117 A jury in the Circuit Court of Yazoo County found Campbell guilty as charged and the court sentenced him to life imprisonment without the possibility of parole. Campbell has appealed that verdict and sentence.

FACTS
¶ 2. On or about July 29, 2000, a group of individuals consisting of three adult males, and several teenagers spent the better part of the day at the home of Mike Campbell cutting grass, cooking out and consuming alcohol and other intoxicating substances. The adults present were the appellant, Clifton Campbell and his brother, Mike Campbell and Mike Campbell's friend, William Arnold. The teenagers were Clifton Campbell's daughter, Nicole (Nikki) Campbell, Mike Campbell's daughter, Michelle Campbell, her boyfriend, Josh Davis, Megan Smith, and Blake McNeer.
¶ 3. At approximately 10:00 p.m., the teenagers and Arnold decided to go to what was known as the "cabin" and sometimes described as a "deer camp." Their stated purpose in going was to fish. Knowing that it would be late by the time the fishing ended, the group also made plans to spend the night. The other two adults went to a bar to drink alcohol.
¶ 4. After arriving at the cabin the two boys and Arnold fished, and Nikki Campbell sat on the tailgate of a truck while Michelle Campbell and Megan Smith went swimming. At some point during the evening, an inebriated Arnold made unwanted sexual advances towards Nikki Campbell which took the form of kissing and intimate touching. Nikki was repelled by the advances. Visibly shaken, she reported what happened to her teenaged companions and stated her desire to leave the premises immediately. Josh Davis became very angry and confronted Arnold about the allegations. Arnold responded by producing a shotgun. The teenagers went back to Mike Campbell's house. It was approximately 3:00 a.m. Forty-five minutes or so later, Mike and Clifton Campbell returned to the residence.
¶ 5. When the adults were informed of Arnold's actions, Mike Campbell's response was that Arnold had been drinking all day and was no doubt drunk, he and Clifton had been drinking during the preceding several hours and were very nearly drunk, so the best thing was for everyone to get some sleep and try to work things out later in the morning. Mike Campbell then went to bed. Josh Davis, angry over having been threatened with a gun, continued to urge Clifton Campbell to extract vengeance against Arnold.
¶ 6. Very shortly thereafter, Clifton Campbell and Davis departed for Clifton Campbell's residence where they retrieved Clifton Campbell's shotgun and went to the cabin. When the two arrived at the cabin, Clifton Campbell did not drive into the driveway of the cabin but parked his car some distance away in an overgrown field. They walked to the cabin and stood on the porch where they looked through the broken windows of the front door and saw Arnold asleep on a sofa. Though the window panes were broken out of the door's window, a Venetian blind covered the window on the inside of the door.
¶ 7. What happened next was a matter of dispute as between the trial testimony of Clifton Campbell and the trial transcript testimony from Josh Davis's trial and statements made by Josh Davis to the authorities. Clifton Campbell claimed that he had a change of heart when he saw Arnold lying asleep on the sofa and decided to go home and call the authorities. He said that after he turned and walked off the porch, Davis came after him, grabbed the gun from his hand, went back upon the *118 porch, stuck the gun through the window and fired three shots at Arnold. He claims that he tried to persuade Davis not to shoot Arnold and to leave the matter to the authorities.
¶ 8. In the meantime, Megan Smith and Michelle Campbell had driven to the cabin. They each testified at trial that they saw Clifton Campbell's car parked in the field and Clifton Campbell running from the cabin with the shotgun in his hand and Davis following closely behind him. They said they left the scene without ever stopping the car. All four ended up back at Mike Campbell's house. Michelle testified that she asked Davis and Clifton Campbell what they had done, to which Davis replied that he had "shot that m____ f____r three times." Clifton Campbell was said to have replied, "I thought that is what you wanted." Clifton Campbell then went home. Michelle Campbell and Megan Smith went back to the cabin with Davis. Once there, they went into the cabin and examined Arnold's body to make certain that he was truly dead.

ISSUES
I. THE STATE DID NOT PROVE THAT THE DECEASED WAS KILLED WHILE THE DEFENDANT WAS ENGAGED IN THE BURGLARY OF A "DWELLING HOUSE" AS CHARGED IN THE INDICTMENT.
II. THE STATE'S USE OF DEFENDANT'S POST-ARREST SILENCE FOR IMPEACHMENT PURPOSES VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
III. THE INTRODUCTION BY DEFENDANT'S TRIAL COUNSEL OF STATEMENTS GIVEN BY DEFENDANT'S NON-TESTIFYING CO-DEFENDANT VIOLATED DEFENDANT'S RIGHTS UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT AND IS PLAIN ERROR.
ANALYSIS

I. DID THE STATE PROVE THAT THE DECEASED WAS KILLED WHILE CAMPBELL WAS ENGAGED IN THE BURGLARY OF A "DWELLING HOUSE" AS CHARGED IN THE INDICTMENT?
¶ 9. This issue was not presented to the trial court. Campbell argues that this Court should review it as plain error. Campbell contends that after having secured an indictment charging him with murder while engaged in the burglary of a dwelling, the State had the burden of proving as an essential element of that charge that the subject structure was a dwelling within the meaning of the burglary statute. Campbell cites this Court's opinion in Carr v. State, 770 So.2d 1025, 1029 (Miss.Ct.App.2000), wherein the Court held that "proof that the structure was, at the time of the alleged crime, a dwelling house, was an essential element of the crime as to which the State had the burden of proof beyond a reasonable doubt." In regard to Carr's failure to raise this issue in the trial court, this Court, in reversing Carr's conviction, went on to hold that, "this failing of the State's proof is so fundamental that we conclude it would be a substantial miscarriage of justice to permit a burglary conviction to stand on this proof, and we, therefore, note it as plain error." Id.
¶ 10. The distinction between the case at bar and Carr is that burglary of an occupied dwelling was the only charge against Carr. Therefore, this Court was on sound ground in holding that the State's failure to prove that the structure was, at the time of the alleged crime, a dwelling house, was an essential element of the *119 crime which the State had the burden of proving beyond a reasonable doubt and, without which, permitting the burglary conviction to stand would constitute a substantial miscarriage of justice and was thus plain error.
¶ 11. In the case at bar, the burglary charge was the underlying felony to capital murder and even though the State did not present evidence of who specifically owned the dwelling, there was plenty of evidence that the structure was indeed a dwelling. It was furnished, it had running water and electricity and it was known to be suitable for human habitation as evidenced by the fact that the members of the party who accompanied the deceased to the structure had intentions themselves of spending the night in the structure.
¶ 12. This Court finds, in the first instance, that this issue, having not been first presented to the trial court for resolution, is procedurally barred. The issue is also without merit.

II. DID THE STATE USE CAMPBELL'S POST-ARREST SILENCE FOR IMPEACHMENT PURPOSES IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT?
¶ 13. In making this charge of error, Campbell once again asks this Court to invoke the doctrine of plain error as he seeks to advance an argument that was not presented to the trial court. His claim is that his decision to invoke his privilege against self-incrimination after his arrest was improperly used against him at trial, in that, he was allegedly impeached by the fact of his decision to remain silent. He cites Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), in alleging that as an accused who was under arrest and having been given the warning provided for in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and advised of his right to remain silent and who did remain silent, the prosecution was "flatly prohibited from using his choice of remaining silent as a weapon against him at trial, either for impeaching him or for cross-examination."
¶ 14. The matter at issue came about as a result of Campbell's trial testimony that he was an innocent bystander to the murder. Campbell testified on direct examination that once he and Davis arrived at the cabin he had a change of heart about confronting Arnold himself and decided to go to law enforcement authorities. He claimed to have been thwarted in this effort by Davis's actions in taking the shotgun from him and shooting Arnold. He also claimed that Davis threatened to kill him if he went to the authorities. On cross-examination, Campbell was asked a series of questions which sought to establish that in spite of his claim of being an innocent bystander, he never went to the authorities to offer his version of events.
¶ 15. The State contends that its questions were asked to show that despite having several hours in which to have reported the murder, Campbell failed to do so, thereby rendering incredible his claim of being an innocent bystander. The State asserts that its questions covered the period between the commission of the murder and the discovery of the body, and explored why Campbell failed to report the murder if he were not involved in its commission. Additionally, the State argues that since nothing was asked about any post-Miranda silence, Doyle did not apply. Finally, the State contends that if there was error, it should be considered harmless in light of the overwhelming evidence of Campbell's guilt and the clear indication that any violation of Doyle was unintended.
*120 ¶ 16. This Court finds that the record supports the State's argument that the questioning was proper cross-examination that did not ask about Campbell's post-Miranda silence. This issue is procedurally barred and without merit.

III. DID THE INTRODUCTION OF STATEMENTS BY CAMPBELL'S CO-INDICTEE, DAVIS, VIOLATE CAMPBELL'S RIGHTS UNDER THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT AS PLAIN ERROR?
¶ 17. Campbell contends that his Sixth Amendment right to confront witnesses was violated when his trial attorney introduced certain statements made by Campbell's co-indictee, Davis, into evidence. Campbell does not allege ineffective assistance of counsel, however, but rather, that his counsel acted in contravention of the holding in Bruton v. United States, 391 U.S. 123, 136, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), that "the admission of a co-defendant's extrajudicial statement that inculpates the other defendant violates the other's Sixth Amendment right to confront witnesses against him and that the unreliability of such evidence is `intolerably compounded' when the accomplice who gave the statement is not tested by cross-examination." Since it was his counsel that introduced the statements, Campbell also hastens to add that this was an error that was "so fundamental that it generates a miscarriage of justice that rises to the level of plain error."
¶ 18. The State cites Waldon v. State, 749 So.2d 262, 266 (Miss.Ct.App.1999), for the proposition that the right of confrontation may be waived by an accused or his attorney. The State also argues that since Davis did the actual shooting and was the only other witness to the shooting besides Campbell, the fact that he gave conflicting statements, in one of which he admitted lying about Campbell's involvement in the crime, the obvious purpose in admitting the statements was to call into question whether anything Davis said about Campbell's participation could be believed. Since there was a legitimate trial tactic or purpose involved in putting the statements into evidence, there is no ground to find that the waiver of the right of confrontation was invalid. This Court agrees. This issue is procedurally barred and is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.