933 So.2d 1014 (2006)
Todd D. DAVIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00604-COA.
Court of Appeals of Mississippi.
July 18, 2006.
*1016 Antwayn Lavell Patrick, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., IRVING and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. On February 24, 2005, a jury sitting before the Holmes County Circuit Court found Todd Davis guilty of three counts of sexual battery under Section 97-3-95(2) of the Mississippi Code. Post-trial, Davis filed an unsuccessful motion for judgment notwithstanding the verdict or for a new trial. Aggrieved, Davis appeals and raises four issues, listed verbatim:
I. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
II. WHETHER THE DEFENSE COUNSEL REPRESENTATION WAS SO INADEQUATE AND INEFFECTIVE WHEN HE FAILED TO CROSS-EXAMINE THE VICTIM, SUBPOENA RECORDS WHICH DETERMINED THAT THE VICTIM WAS NOT MOLESTED AND SUBPOENA THE WITNESS WHICH WOULD HAVE SHOWED THE MOTHER WHO REPORTED THE MOLESTATION BIAS TOWARDS THE APPELLANT?
III. WETHER THE STATE CLOSING ARGUMENTS WERE SO PREJUDICED WHEN HE SAID THAT THIS CASE IS ALL ABOUT HOMOSEXUALITY AND EVEN O.J. ATTEMPTED TO LOOK FOR THE PURPORTED REAL KILLER?
IV. THE CUMULATIVE ERRORS IN THIS CASE DENIED TODD DAVIS A RIGHT TO A FAIR TRIAL.
Finding no error in Davis's convictions, we affirm. However, for inconsistencies in Davis's sentencing, which we will discuss in detail below, we remand this matter to the circuit court for clarification of Davis's sentences.

FACTS AND PROCEDURAL HISTORY
¶ 2. Todd Davis and Josha Fields had a four year old son, Jack.[1] Jack lived with Josha during the week and spent weekends with Davis. For approximately three weeks in February, Jack told Josha that his "behind was itching." Josha assumed that Jack was not cleaning himself properly, as Jack seemed to feel better after Josha bathed him. However, on Wednesday, February 25, 2004, Josha examined Jack and found what to her appeared as indications that Jack had been molested. Josha asked Jack if anyone had been touching him. First, Jack implicated his two-year-old cousin. Josha thought Jack was not being truthful with her so she asked him again. Jack then told his mother that Davis "sucked on my thing like it was a bottle." Jack also told Josha that Davis "put his fingers in my bootie" and that Davis "stuck his thing in his behind."
¶ 3. Alarmed, Josha took Jack to see her mother, Sheila Murray. At Josha's request, Jack told his grandmother exactly what he told Josha. Sheila and Josha took Jack to the emergency room at the Montfort Jones Hospital in Kosciusko, Mississippi.
*1017 ¶ 4. That same day, Glenda Nail, a social worker employed by the Attala County Department of Human Services, received a telephone call from the Montfort Jones emergency room. The hospital requested that a social worker come to the hospital and interview Jack. Nail responded and took Ruth Eden, a fellow social worker, and Jamie Burks, a student intern. Nail and Eden interviewed Jack. Jack told them Davis "stuck his fingers in his bootie." Eden asked Jack if anything else happened. Jack told them that Davis "put his thing in his mouth." When asked to identify his "thing," Jack "grabbed his own penis." Jack told them that Davis "sucked on it like it was a bottle."
¶ 5. Jack's allegations notwithstanding, the emergency room physician found no conclusive indications of trauma and no conclusive indications of molestation. Josha was unsatisfied with the emergency room physician's conclusions. Josha was especially dissatisfied that the emergency room physician did not interview Jack. To that end, Josha sought a second opinion.
¶ 6. Apparently, Josha took Jack to the Attala County Health Department because Dr. Betty Turner testified that, on Thursday, February 26, 2004, the health department contacted her and requested that she examine Jack for possible molestation. Dr. Turner, a pediatrician at the Kosciusko Medical Center, examined Jack and found that the "skin around [Jack's] rectum was red and irritated and ... [Jack] had several fairly fresh lacerations in the rectum." According to Dr. Turner, those lacerations were consistent with sexual penetration. Dr. Turner's opinion was that Jack had been molested or sodomized, but she found no DNA evidence. Jack also indicated that Davis touched him inappropriately.
¶ 7. On April 28, 2004, the Holmes County Grand Jury returned an indictment against Davis and charged him with three counts of sexual battery under Section 97-3-95(2) of the Mississippi Code. An order dated May 26, 2004, reflects that Davis pled not guilty to the charges. Davis was tried on February 24, 2005. Before the prosecution presented any testimony before the jury, the circuit court conducted a hearing to determine whether statements that Jack made to other witnesses would be admissible under M.R.E. 803(25), the "tender years" exception. The circuit court heard testimony from Josha, Sheila Murray, Glenda Nail, and Deputy Sam Chambers. Afterwards, the circuit court held:
The Court, after hearing testimony of the witnesses out of the presence of the jury, finds that, due to the child's age at a time of the alleged incident, the child's lack of knowledge of sexual behavior and lack of experience at age four, and the contents of the statements, in that the child described the sexual misconduct that was alleged to have been perpetrated upon him.... This Court, therefore, finds that because of the timing of the statement, the detailed contents of the statement, and the circumstances surrounding the statement, that the child, at the time of this incident, was of tender years, and that the statements allegedly made to the witnesses provide additional reliability and they are therefore admissible pursuant to Rule 803(25) of the Mississippi Rules of Evidence.
¶ 8. The circuit court then considered whether Jack was competent to testify. Jack was five at the time of trial. The circuit court questioned Jack and allowed the prosecution and Davis's attorney an opportunity to question Jack. Afterwards, the circuit court found that Jack was competent to testify.
¶ 9. The prosecution called Jack as its first witness. The prosecution's examination proceeded as follows:

*1018 Q. [Jack], I just have a couple of questions for you. Okay? Do you know Todd Davis?
A. Yes.
Q. Who is Todd Davis?
A. My daddy.
Q. Okay. Did Todd Davis do something to you?
A. Yes.
Q. Did you tell your mother about that?
A. Yes.
Q. Did you tell her the truth?
A. Yes.
Davis waived cross-examination of Jack.
¶ 10. The prosecution then presented testimony from Josha, Sheila Murray, Dr. Turner, and Glenda Nail. They each testified that, according to Jack, Davis touched Jack inappropriately. Additionally, Dr. Turner testified that she found physical indications that Jack had been molested. However, Dr. Turner found no evidence that specifically pointed to Davis.
¶ 11. Davis took the stand and testified that he did not molest Jack. Davis claimed that, the weekend of February 21-22, Jack spent the majority of that weekend with Davis's sister, Sherrell Riley. Davis testified that Sherrell had children and that Jack enjoyed playing with them. According to Davis, Jack stayed with Sherrell in Goodman, Mississippi, while he and his girlfriend, Katrina Wright, went to Jackson.
¶ 12. Davis next called his sister, Sherrell Riley. Sherrell testified that, on Friday, February 20, 2004, Davis took Jack to her house and that Jack stayed with her that entire weekend. Next, Davis called his mother, Katherine Davis. Katherine testified that Davis lived with her, that Sherrell lived next door, and that Jack stayed with Sherrell on Friday, February 21st and Saturday, February 22nd. Davis then called his girlfriend, Katrina Wright. Katrina testified that she was with Davis on Friday, February 20th. According to Katrina, on Friday, she and Davis went out to eat at approximately 6:30 p.m. and returned home around 10:00 p.m. She also testified that, on Saturday, she and Davis left around 7:00 p.m. and drove to Jackson. Katrina stated that she dropped Davis off at his house around midnight. On cross-examination, Katrina testified that she was not with Davis the entire weekend. Davis then called four character witnesses. Those witnesses testified that Davis had a good reputation in the community in which he lived.
¶ 13. As mentioned, the jury found Davis guilty of all three counts of sexual battery. Posttrial, Davis filed unsuccessful motions for JNOV and for a new trial. Aggrieved, Davis appeals. We turn to his allegations.

ANALYSIS

I. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 14. In alleging that the verdict was against the overwhelming weight of the evidence, Davis appeals the circuit court's decision to overrule his motion for a new trial. "A motion for a new trial seeks to vacate the judgment on grounds related to the weight, not sufficiency, of the evidence." Verner v. State, 812 So.2d 1147(¶ 6) (Miss.Ct.App.2002). "A motion for a new trial is addressed to the trial court's sound discretion." Fleming v. State, 732 So.2d 172(¶ 37) (Miss.1999).
¶ 15. On appeal, we must consider all of the evidence, not just the evidence which supports the State's case, in the light most favorable to the State. *1019 May v. State, 460 So.2d 778, 781 (Miss. 1984). Accordingly, "[t]his Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible." Smith v. State, 868 So.2d 1048(¶ 11) (Miss.Ct.App.2004). Rather, "this Court must consider all the evidence, not just that supporting the case for the prosecution, in the light most consistent with the verdict, and give the State all favorable inferences which may be drawn from that evidence." Fleming, 732 So.2d at (¶ 38).
¶ 16. Davis raises six points to suggest that the verdict was against the weight of the evidence. First, Davis submits that "[t]he State's witnesses only testified what the minor child stated to them after the child probably was coached by the mother, Josha Field." In effect, Davis alleges that Josha fabricated the allegations. Davis raised this allegation at trial, but no evidence suggested that Josha coached Jack.
¶ 17. Second, Davis points out that Jack first implicated his two-year-old cousin as the perpetrator of the physical injuries to his rectum. Though he does not say so, it seems that Davis attacks the credibility of Jack's allegations. That is, Davis suggests that because Jack implicated his cousin, who obviously could not have molested him, then the allegations were not credible. We are prohibited from weighing credibility on appeal. "Matters regarding the credibility and weight to be accorded the evidence are to be resolved by the jury." Verner, 812 So.2d at (¶ 7).
¶ 18. Third, Davis notes that the emergency room physician found no indications that Jack had been molested. Davis is correct. The emergency room physician conducted an exam and found the results inconclusive. As such, the emergency room physician could not conclude that the allegations were true and, likewise, could not conclude that the allegations were false. Be that as it may, Dr. Turner testified that she found lacerations to Jack's rectum consistent with molestation. Accordingly, the jury heard conflicting evidence from two examinations. One examination found inconclusive results, and the other concluded that Jack had been molested. "Where there is conflicting testimony, the jury is the judge of the credibility of the witnesses." Bessent v. State, 808 So.2d 979(¶ 21) (Miss.Ct.App. 2001).
¶ 19. Fourth, Davis states, "there were testimony by the defense witnesses that Josha had much animosity towards Davis." Davis seems to claim that Josha was a scorned woman and that she coached Jack or otherwise created the charges against Davis. When Davis testified, he alleged that Josha felt animosity towards him because he would not purchase a vehicle for her. Katrina also suggested that Josha placed a threatening letter on her vehicle. Davis's allegations amount to an attack on Josha's credibility. However, those instances never progressed beyond allegations, as Josha testified that she was not angry at Davis based on his refusal to purchase a vehicle for her and that she did not place that letter on Katrina's vehicle. Again, the jury weighed Josha's credibility and we are not at liberty to invade that particular consideration, reserved as a province of the jury.
¶ 20. Fifth, Davis points out that Josha testified that "she had gone through this before with [Jack]." Josha made that statement on direct examination during the circuit court's hearing on whether Jack's statements would be admissible under the tender years exception to the hearsay rule. In particular, Josha referenced the fact *1020 that she was unsatisfied with the emergency room physician's conclusion. Josha said, "Being as I had went through this before with [Jack], I wasn't taking his opinion on that." The prosecutor then asked, "you said you had been through it before about other medical matter [sic] with [Jack]?" Josha answered, "Uh-huh. Him being fondled with."
¶ 21. It is important to realize that the jury was not in the courtroom during the hearing on the admissibility of Jack's statements under the tender years exception. During Josha's actual testimony, Josha did not mention any previous molestation that Jack might have suffered. The jury did not hear that testimony, much less apply it to their analysis of the weight of the evidence. As such, it is not appropriate to consider whether it somehow affects the weight of the evidence.
¶ 22. Finally, Davis submits that Jack did not specifically testify that Davis molested him and that no physical evidence specifically indicated that he molested Jack. Davis is correct. Jack did not specifically implicate Davis during Jack's brief testimony. Joshua, however, testified that Jack told her that Davis molested him. Sheila Murray also testified that Jack told her Davis molested him. Glenda Nail and Dr. Turner offered similar testimony. Davis does not raise an issue as to whether those multiple instances of hearsay testimony were proper. Accordingly, the jury heard evidence, albeit in the form of hearsay testimony, that Davis molested Jack. Even the testimony of a single uncorroborated witness can sustain a conviction even though there may be more than one witness testifying to the contrary. Verner, 812 So.2d at (¶ 7). As such, we find no reversible error based on the weight of the evidence.

II. WHETHER THE DEFENSE COUNSEL REPRESENTATION WAS SO INADEQUATE AND INEFFECTIVE WHEN HE FAILED TO CROSS-EXAMINE THE VICTIM, SUBPOENA RECORDS WHICH DETERMINED THAT THE VICTIM WAS NOT MOLESTED AND SUBPOENA THE WITNESS WHICH WOULD HAVE SHOWED THE MOTHER WHO REPORTED THE MOLESTATION BIAS TOWARDS THE APPELLANT?
¶ 23. In this issue, Davis claims he received ineffective assistance of counsel because his attorney failed to cross-examine the victim, failed to subpoena records, and failed to subpoena witnesses. When a party raises an ineffective assistance of counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert the same claim in a post-conviction relief proceeding. Pittman v. State, 836 So.2d 779(¶ 38) (Miss.Ct.App.2002). "We should reach the merits on an ineffective assistance of counsel issue on direct appeal only if `(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" Id. at (¶ 39) (quoting Colenburg v. State, 735 So.2d 1099, 1101 (Miss.Ct.App.1999)). If we do not consider the issue due to the state of the record, assuming we affirm the conviction, Davis may raise his ineffective assistance of counsel claim in post-conviction relief proceeding. Id. The parties have not entered any such stipulation, and the record does not affirmatively show ineffectiveness of constitutional dimensions. Accordingly, Davis may raise his ineffective assistance of counsel claim in a postconviction relief proceeding.

*1021 III. WETHER THE STATE CLOSING ARGUMENTS WERE SO PREJUDICED WHEN HE SAID THAT THIS CASE IS ALL ABOUT HOMOSEXUALITY AND EVEN O.J. ATTEMPTED TO LOOK FOR THE PURPORTED REAL KILLER?
¶ 24. Davis claims that prosecutorial misconduct occurred based on two comments during closing arguments. First, Davis complains about the prosecutor's comment that:
This is a case concerning homosexuality. Okay? This is what it is. Having sex with somebody of the same sex is homosexuality. Why couldn't he get a male to come up here from the community his age? I mean why didn't you hear any character witnesses from male persons his age telling you what kind of a good fellow he was? He's been here his whole life! You know, that'sI thought of that, you know.
¶ 25. According to Davis, "These statements were stated to the jury at the beginning of the State closing arguments. To make these statements, one can only make one conclusion. The State wanted to create prejudice an unduly influence the jury. The State flamed the jury by inciting their prejudice against homosexuality."
¶ 26. Second, Davis complains about the prosecutor's statement, "You know, heck, even during the O.J. Trial, O.J. was going to try to find the real killer after the trial was over with. Todd Davis wasn't even concerned about finding the real perpetrator. . . ." (emphasis in original). Davis asserts, "The pervasive nature of improper comments, remarks and innuendo of prejudice against Appellant Davis that he could not receive a fair trial. Based on this fact, this cause should be reversed and remanded for a new trial."
¶ 27. However, Davis did not object to either of these statements. When a defendant fails to contemporaneously object at trial, the issue is procedurally barred on appeal. Brown v. State, 907 So.2d 336(¶ 12) (Miss.2005).

IV. THE CUMULATIVE ERRORS IN THIS CASE DENIED TODD DAVIS A RIGHT TO A FAIR TRIAL.
¶ 28. Davis claims that we should reverse based on the cumulative effect of errors. However, we have found no error, so there can certainly be no cumulative effect.

SENTENCING
¶ 29. The jury found Davis guilty of three counts of sexual battery under Miss.Code Ann. § 97-3-5(2). As such, the jury returned three separate verdicts of guilt against Davis. The circuit court sentenced Davis "to serve ten (10) years in the Mississippi Department of Corrections." Pursuant to Miss.Code Ann. § 99-7-2(3) (Rev.2000), "When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction." (emphasis added).
¶ 30. As it stands, the circuit court could have sentenced Davis to ten years for count one, ten years for count two, and ten years for count three and then set counts two and three to run concurrent to count one or the circuit court could have suspended the sentences in counts two and three. There are a number of ways the circuit court could have computed Davis's sentence, but no particular method was set forth.
¶ 31. The issue of Davis's sentencing was not raised on appeal. Generally, Mississippi Rule of Appellate Procedure *1022 28(a)(3) prohibits this Court's review of any issue not argued on appeal. However, M.R.A.P. 28(a)(3) provides an exception allowing that "the court may, at its option, notice a plain error not identified or distinctly specified." There are certain exceptions carved out to procedural bars where there is a question that a party's fundamental rights have been violated. Ethridge v. State, 800 So.2d 1221(¶ 7) (Miss.Ct.App.2001) (citing Sneed v. State, 722 So.2d 1255, 1257(¶ 7) (Miss.1998)).
¶ 32. "According to the Mississippi Supreme Court, the reviewing court may address issues as plain error when the trial court has impacted upon a fundamental right of the defendant." Moore v. State, 755 So.2d 1276(¶ 9) (Miss. Ct.App.2000) (internal citations omitted). "The right to be free from an illegal sentence has been found to be fundamental." Ethridge, 800 So.2d at (¶ 7) (citing Sneed, 722 So.2d at (¶ 7)). Because the circuit court simply sentenced Davis "to serve ten (10) years" and did not distinguish that sentence among the three charges for which Davis was convicted, we find plain error and therefore remand this matter to the circuit court for appropriate sentencing. On remand, the circuit court should bear in mind "that once a circuit or county court exercises its option to impose a definite sentence it cannot subsequently set that sentence aside and impose a greater sentence." Eastman v. State, 909 So.2d 171(¶ 12) (Miss.Ct.App.2005) (quoting Leonard v. State, 271 So.2d 445, 447 (Miss. 1973)).
¶ 33. THE JUDGMENT OF THE HOLMES COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I, II, AND III IS AFFIRMED. THIS MATTER IS REMANDED TO THE CIRCUIT COURT FOR CLARIFICATION OF SENTENCE NOT INCONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] We use a fictitious name to maintain the child's anonymity.